**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aluminum Trailer Company, | No. CV-20-00140-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Sidi Spaces LLC, et al., | |
| Defendants. | |

At issue is Sidi Spaces, LLC ("Sidi Spaces") and Charles L. and Sarah Sidi's ("the Sidis") motion to dismiss, to which Richard and Liz Sikorski ("the Sikorskis") have joined, which is fully briefed.[1] (Docs. 9, 13, 16, 18.) For the reasons stated below, Defendants' motion to dismiss is denied.

**I. Background**

Plaintiff Aluminum Trailer Company ("ATC") is an Indiana company that manufactures trailers, including mobile marketing trailers. (Doc. 17-1 at 4.) Sidi Spaces is an Arizona limited liability company that purchases customized trailers built by third-party manufacturers and then sells or leases them to its own customers with its label, "BizBox." (*Id.* at 2-4.) On October 8, 2013 Sidi Spaces obtained Patent No. US 8,550,528

---

[1] Sidi Spaces and the Sidis' request for judicial notice (Docs. 10, 19, 20) is granted. Defendants also request that the Court strike portions of ATC's response because it contains material outside of the pleadings; the request is denied. Defendants argue that ATC references facts "pertinent to when it discovered information" that are not included the operative pleading. (Doc. 18 at 10.) It is within this Court's discretion to "take judicial notice [of the contested material] on its own." Fed. R. Evid. 201(c)(1).

B2 (the "Sidi Patent") for an "expanding mobile utility structure." (*Id.*)

In October 2014, Sidi Spaces and ATC entered into a non-exclusive manufacturing agreement (the "Manufacturing Agreement") under which ATC began manufacturing trailers for Sidi Spaces. (*Id.* at 5.) The Manufacturing Agreement contained confidentiality protections for the Sidi Patent and confidential ATC information that survive for five years following the agreement's termination. (*Id.* at 5-7.)

Sidi Spaces hired a trailer transport company also used by ATC, Jimbo and Company Transport ("Jimbo & Co."), to transport trailers that ATC manufactured and sold to Sidi Spaces. (*Id.* at 9.) In July 2018, EPS-Doublet ("EPS") hired ATC to manufacture a trailer for an EPS customer, Timex (the "Timex Trailer"). (*Id.* at 11.) On January 16, 2019, ATC shipped the Timex Trailer to EPS headquarters by means of Jimbo & Co. (*Id.* at 12.) ATC provided the Jimbo & Co. employee with materials that identified EPS as the intended recipient. (*Id.*) A label on the front of the Timex Trailer also indicated that it was being shipped to EPS. (*Id.* at 12-13.)

On the morning of January 17, 2019, Jimbo & Co.'s Chief Executive Officer, James Hansen, noticed the Timex Trailer on Jimbo & Co.'s lot and mistakenly concluded that it was being transported to Sidi Spaces. (*Id.* at 13.) Mr. Hansen sent a text message to Sidi Spaces' president, Charles Sidi, asking him to call him. (*Id.*) During the call, Mr. Sidi advised Mr. Hansen that the Timex Trailer did not belong to Sidi Spaces. (*Id.*) Matt Knepp, an ATC employee, also confirmed in a separate call with Mr. Hansen that the Timex Trailer belonged to ATC and was being shipped to EPS. (*Id.*)

Mr. Sidi sent an email to Mr. Hansen claiming that the Timex Trailer was an "[u]nauthorized" copy of the Sidi Patent and had "been built by ATC without our permission . . . in breach of [Sidi Spaces'] manufacturing agreement [with ATC.]" (*Id.* at 14.) Mr. Sidi also texted Mr. Hansen, asking Jimbo & Co. to hold the Timex Trailer until the situation could be resolved. (*Id.* at 13.) At Mr. Sidi's request, Mr. Hansen took and sent a series of photos and videos of the Timex Trailer to Mr. Sidi. (*Id.* at 13-15.) Allegedly, none of these materials depicted the Sidi Patent and neither Mr. Sidi nor any

Sidi Spaces employee has ever personally inspected the Timex Trailer. (*Id.* at 14.)

On January 18, 2019, Mr. Sidi sent a text message to Mr. Hansen stating "[w]e have sent our cease and desist and demand letter" to ATC. (*Id.* at 15.) Mr. Sidi further instructed Mr. Hansen to have Jimbo & Co. immediately remove all ATC-manufactured Sidi products from ATC's lot. (*Id.* at 16.) Sidi Spaces also sent ATC a demand letter (the "Sidi Demand"), asserting that ATC had breached the Manufacturing Agreement and threatening legal action (*Id.* at 16-17.) The same day, Sidi Spaces CEO Rick Sikorski emailed a copy of the Sidi Demand to Chris Gartenmann, an EPS employee and ATC's primary point of contact for the Timex Trailer project, threatened legal actions, and sent a series of text messages to him. (*Id.*) Based on the communications he received from Mr. Sidi between January 17-18, 2019, Mr. Hansen believed that ATC had violated the Sidi Patent by manufacturing the Timex Trailer. (*Id.* at 16.) ATC terminated the Manufacturing Agreement, with an effective termination date in October 2019. (*Id.* at 19.)

On January 28, 2019 Sidi Spaces filed a complaint against ATC in Maricopa County Superior Court (the "2019 Action"), alleging that ATC had violated the Manufacturing Agreement.[2] (*Id.* at 18.) On April 26, 2019, ATC filed its answer in the 2019 Action, including a counterclaim for tortious interference with ATC's business with EPS. (Doc. 16 at 4-5.) ATC voluntarily dismissed the counterclaim after learning that EPS had not severed its business relationship with ATC.[3] (*Id.* at 5.)

ATC allegedly discovered the January 17-18, 2019 communications between Mr. Sidi and Mr. Hansen on December 2, 2019 while deposing Mr. Hansen in the 2019 Action. (*Id.* at 20-21.) Around January 10, 2020, ATC also first learned that Sidi Spaces had shared ATC's confidential design information with inTech Trailers ("inTech"), a trailer

---

[2] ATC removed the case to federal court based on diversity. *See* Notice of Removal, 03/04/19, Dkt. 1, 2:19-cv-01476-SRB. The matter is currently pending in Judge Bolton's court. *Sidi Spaces, LLC v. The Aluminum Trailer Company dba ATC Trailers*, 2:19-cv-01476-SRB ("SRB case").

[3] Defendants' argument that the 2019 counterclaim precludes the instant complaint is unavailing. As noted above, the 2019 counterclaim alleged that Sidi Spaces tortiously interfered with the business relationship between ATC and EPS. (Doc. 16 at 15.) The operative complaint does not allege tortious interference with ATC's business relationship with EPS. (Doc. 17-1 at 21-30.)

manufacturer, in violation of the Manufacturing Agreement. (Doc. 17-1 at 19, 21.) Around December 19, 2018, Sidi Spaces had begun looking for a new manufacturer to replace ATC and conducted a teleconference with inTech regarding a potential manufacturing agreement. (*Id.* at 11-12.) Between December 2018 and April 2019, without ATC's approval, Sidi Spaces sent inTech 24 pages of ATC's confidential design information after removing ATC's logos therefrom. (*Id.* at 19-21.) Similarly, in late January 2020, ATC first learned that Sidi Spaces had shared ATC's confidential design information with EPS, in violation of the Manufacturing Agreement. (*Id.* at 10.) On January 31, 2018, while Sidi Spaces was cultivating EPS as a potential customer, without ATC's approval, Mr. Sidi sent an email to Gian Lasher, an EPS sales employee, linking to a Dropbox file that included ATC's confidential design information with the ATC logos removed. (*Id.* at 10, 11, 19.)

ATC requested that Sidi Spaces stipulate to ATC amending its pleadings in the 2019 Action to add new counterclaims. (Doc. 16 at 6.) Sidi Spaces declined. (*Id.*) Because the amendment deadline had passed and discovery was nearly complete in the 2019 Action, ATC filed a complaint in this Court on January 18, 2020.[4] (*Id.*; Doc. 1.) The original complaint contained six counts against Defendants. (Doc. 1 at 13-18.) Count I brought a claim for defamation/slander/libel against all Defendants. (*Id.* at 13-15.) Count II asserted an alternative theory of recovery for defamation *per se*/libel *per se*/slander *per se* against all Defendants. (*Id.* at 15.) Counts III and IV brought claims for trade libel/injurious falsehood and trade libel *per se* against all Defendants. (*Id.* at 16-17.) Count VI asserted a claim for breach of the covenant of good faith and fair dealing against only Sidi Spaces.[5] (*Id.* at 17.) Count VIII did not allege a separate claim, but asked for relief (presumably for one of the previous counts) in the form of a permanent injunction against all Defendants to bar them from continued disparagement of ATC's reputation.[6] (*Id.* at 18.)

On April 6, 2020, ATC filed its First Amended Complaint ("FAC"), alongside its

---

[4] ATC did not move to amend their complaint in the 2019 Action before filing their complaint in this Court. *See Sidi Spaces, LLC v. The Aluminum Trailer Company dba ATC Trailers*, 2:19-cv-01476-SRB.
[5] ATC's original complaint contains no count V. (Doc. 1 at 16-17.)
[6] ATC's original complaint contains no count VII. (Doc. 1 at 17-18.)

response to the Defendants' motion to dismiss.[7] (Doc. 16-1.) The first four counts, brought against all Defendants, mirror the original complaint. (Doc. 17-1 at 21-25.) In newly added Count V, ATC brings a breach of contract claim against Sidi Spaces, alleging that it breached the Manufacturing Agreement by sharing ATC's confidential information with EPS and inTech. (*Id.* at 25-26.) Count VI, breach of the covenant of good faith and fair dealing, alleges that Sidi Spaces deprived ATC of the benefits of the Manufacturing Agreement by interfering with the delivery of the Timex Trailer, disparaging ATC, and sharing ATC's confidential information.[8] (*Id.* at 26-27.) In newly added Count VII, conversion, ATC alleges that Mr. Sidi and Sidi Spaces deprived ATC of its ownership or possession of the Timex Trailer by directing Mr. Hansen to take photos and videos of it. (Doc. 17-1 at 27-28.) Newly added Count VIII, misappropriation of trade secrets in violation of A.R.S. §44-401, *et seq.*, alleges that Sidi Spaces improperly shared ATC's confidential information and was unjustly enriched by doing so. (*Id.* at 28-29.) It also alleges that Sidi Spaces will continue to misappropriate ATC's confidential information unless it is restrained. (*Id.* at 29.) Count IX, permanent injunction, once again is not a separate claim,[9] but seeks relief in the form of an order restraining all Defendants from disparaging ATC's reputation and business.[10] (*Id.* at 30.)

On March 18, 2020 Defendants filed a motion to dismiss, arguing that ATC's complaint is barred by the *Noerr-Pennington* doctrine and fails because ATC neglected to file a compulsory counterclaim in the 2019 Action under Federal Rule of Civil Procedure Rule 13. (Doc. 9 at 1.) The motion is now ripe.

**II. Legal Standard**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil

---

[7] On April 8, 2020, ATC filed a notice of errata, including the correct version of the FAC. (Doc. 17; Doc. 17-1.)

[8] Count VI of the original complaint focused only on Defendants' alleged defamatory statements and not Sidi Spaces' alleged interference with the Timex Trailer or sharing of ATC's confidential information. (Doc. 1 at 17.)

[9] A permanent injunction is not a claim, it is a form of relief a party can ask for if it succeeds on some underlying claim. As such, it is not appropriate to enumerate a request for a permanent injunction as a separate count. Such a request is properly stated in the demand for relief section of a complaint.

[10] Count IX of the FAC mirrors count VIII of the original complaint. (Doc. 1 at 18.)

Procedure 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 680, and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2008).

**III. Discussion**

**A. Request for Judicial Notice**

When evaluating a motion to dismiss, "a court may consider only the complaint, any exhibits properly included in the complaint, and matters that may be judicially noticed." *Ader v. SimonMed Imaging Inc.*, 324 F. Supp. 3d 1045, 1049 (D. Ariz. 2018). A court may take judicial notice of facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). A court may take judicial notice of "*undisputed* matters of public record" but not "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *impliedly overruled on other grounds as discussed in Gallardo v. Dicarlo*, 203 F. Supp. 2d 1160, 1162 n. 2 (C.D. Cal. 2002). Defendants ask the Court to judicially notice three documents from the 2019 Action: (1) Sidi Spaces' complaint (Doc. 10-1), (2) ATC's partial answer and counterclaim (Doc. 10-2), and (3) ATC's notice of voluntary dismissal of its counterclaim (Doc. 10-3).

Consistent with *Lee*, judicial notice of Documents 10-1, 10-2, and 10-3 and their allegations is appropriate because the documents "can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned." Fed. R. Evid. 201(b)(2). Defendants have clarified that judicial notice of the documents from the 2019

1  Action merely establishes that "disputed issues of fact have been expressed" and that
2  establishing "the truth of the allegations is not involved" in their request. (Doc. 20 at 3.)
3  Thus, Defendants' request for judicial notice of the documents, not of the truth of the
4  allegations contained therein, is granted.

### B. *Noerr-Pennington* Doctrine

The *Noerr-Pennington* doctrine derives from the First Amendment's Petition Clause, which protects the right to "petition the Government for a redress of grievances." U.S. Const. Amend. I, cl. 6. It protects those who petition the government for redress "from statutory liability for their petitioning conduct." *Theme Promotions, Inc. v. News America Marketing, FSI*, 546 F.3d 991, 1006 (9th Cir. 2008) (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)). The doctrine covers "protected petitioning activity or activity which must be protected to afford breathing space to the right of petition" that is not "sham litigation," including "communications to the court," such as "[a] complaint, an answer, a counterclaim, and other assorted documents and pleadings." *Sosa*, 437 F.3d at 933, 938 (citing *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005)).

Defendants assert that the *Noerr-Pennington* doctrine forecloses claims involving their alleged defamatory statements (the "Defamatory Statements") because they were protected petitioning conduct. (Doc. 9 at 3.) Defendants' *Noerr-Pennington* argument is limited to Counts I, II, III, IV, VI, VII, and IX of the FAC, because those counts allege harms caused by the Defamatory Statements.[11] (Doc. 17-1 at 21-28, 30.) Defendants claim that the Defamatory Statements are protected petitioning conduct because they were made pursuant to efforts "to prohibit ATC from making use of [Sidi Spaces'] propriety information" and were "reasonably related to the petitioning of the court" in the 2019 Action. (Doc. 9 at 3-4.)

---

[11] Count VI alleges harms both from the Defamatory Statements and Sidi Space's alleged sharing of ATC's confidential information with EPS and inTech. (Doc. 17-1 at 26-27.) Defendants' *Noerr-Pennington* argument does not apply to counts V and VIII of the FAC, because they only allege harms caused by Sidi Spaces alleged sharing of ATC's confidential information in violation of the Manufacturing Agreement. (Doc. 17-1 at 25-26, 28-30.)

At the outset, the Defamatory Statements were not communications to the court; they were made before the 2019 Action was filed. Even if the Court were to assume that the relevant statements were petitioning conduct, the doctrine "does not shield alleged defamatory statements made during . . . petitioning." *McFarlin v. Gormley*, No. CV-06-1594-HU, 2008 WL 410104, *10 (D. Or. Feb. 12, 2008) (citing *McDonald v. Smith*, 472 U.S. 479 (1985)); *see also Chevalier v. Animal Rehab. Ctr.*, 839 F.Supp. 1224, 1236 (N.D. Tex. 1993) (finding that *McDonald*, "rather than the *Noerr-Pennington* doctrine, [is] instructive" on the issue of alleged defamation that occurred during the petitioning and in publications inducing the petitioning). Despite the importance of the right of petition, "it does not follow that the Framers of the First Amendment believed that the Petition Clause provided absolute immunity from damages for libel." *McDonald*, 472 U.S. at 483. "[T]here is no sound basis for granting greater constitutional protection to statements made in a petition," because doing so "would elevate the Petition Clause to special First Amendment status." *Id.* at 485. Thus, the *Noerr-Pennington* doctrine does not immunize Defendants.

### C. Rule 13 Compulsory Counterclaim

Defendants also contend that Plaintiff's claims are barred because they were required to have been brought as compulsory counterclaims in the 2019 Action. (Doc. 9 at 7.) A compulsory counterclaim is "any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). The goal of Rule 13(a) "is to prevent multiplicity of litigation and to bring about prompt resolution of all disputes arising from common matters." *Local Union No. 11, Int'l Bhd. of Elec. Workers, AFL–CIO v. G.P. Thompson Elec., Inc.*, 363 F.2d 181, 184 (9th Cir. 1966). For that reason, "[i]f a party fails to plead a compulsory counterclaim, [the party] is held to waive it and is precluded by res judicata from ever suing upon it again." *Id.*

First, ATC was not required to raise its claims as counterclaims in the 2019 Action

because ATC had not discovered them "at the time of its service[.]" Fed. R. Civ. P. 13(a)(1)(A). The Discovery Rule "delays accrual of a cause of action until the plaintiff has 'discovered' it." *Merck & Co. v. Reynolds*, 559 U.S. 633, 633 (2010). Discovery occurs "both when a plaintiff *actually* discovers the facts and when a hypothetical reasonably diligent plaintiff would have discovered them." *Id.* at 634. "A counterclaim acquired by defendant after answering the complaint will not be considered compulsory, even if it arises out of the same transaction as does plaintiff's claim." *Haw. Reg'l Council of Carpenters v. Yoshimura*, No. CV 16-00198 ACK-KSC, 2016 WL 4745169, at *6 (D. Haw. Sept. 12, 2016) (citation omitted).

Sidi Spaces commenced the 2019 Action on January 28, 2019. (Doc. 17-1 at 18.) ATC served its partial answer in the 2019 Action on April 16, 2019. (Doc. 16 at 14.) ATC, despite reasonable diligence,[12] allegedly did not discover Defendants' communications to Mr. Hansen until December 2, 2019 or Defendants' alleged sharing of its confidential information with inTech and EPS until January 2020. (Doc. 17-1 at 10, 20-21.) Thus, ATC was not required to raise its claims as counterclaims 2019 Action.

Second, even if ATC had discovered its claims at the time of service in the 2019 Action, it was not required to raise them as counterclaims because the Sidis and the Sikorskis were not parties in the 2019 Action. *See* Fed. R. Civ. P. 13(a)(1). "Although Rule 13(a)(1)(B), like Rule 19, encourages that all claims be resolved in one action with all the interested parties before the court, Rule 13 fulfills this objective by allowing, not mandating, that a defendant bring counterclaims that require additional parties." *Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 754 (7th Cir. 2015). "To hold that Rule 13 compels the joinder of additional parties through the use of Rule 20 would read the term 'opposing party' out of Rule 13(a)." *Id.* at 755.

Sidi Spaces is the only plaintiff in 2019 Action and the only party targeted in ATC's 2019 counterclaim. *See* SRB case; (Doc. 10-2 at 20-22.). Here, ATC's complaint targets Sidi Spaces, the Sidis and the Sikorskis. (Doc. 17-1 at 2.) ATC was permitted but was not

---

[12] Defendants have not argued that ATC was not reasonably diligent. (Doc. 9 at 6-9.)

compelled to join additional parties in the 2019 Action. *Pace*, 795 F.3d at 754. Thus, ATC's filing of its complaint in this Court was appropriate. Accordingly,

**IT IS ORDERED** that the Defendants' motion to dismiss (Doc. 9) is **DENIED**.

Dated this 17th day of July, 2020.

Douglas L. Rayes
United States District Judge